IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ERIC C. YOUNGBLOOD, SR., *et al.*,        )
                                          )
    Plaintiffs,                           )
                                          )
    v.                                    )        CIVIL CASE NO. 2:19-cv-1072-ECM
                                          )                      (WO)
CITY OF GEORGIANA, ALA., *et al.*,        )
                                          )
    Defendants.                           )

## MEMORANDUM OPINION and ORDER

## I. INTRODUCTION

Now pending before the Court is the motion for summary judgment filed by Defendants Willie Benbow ("Benbow"), Jeremy Peagler ("Peagler"), Carlton Cook ("Cook") and the City of Georgiana ("Georgiana") (collectively, "the Defendants").[1] (Doc. 181).

In the operative complaint (doc. 18), Plaintiff Eric C. Youngblood ("Youngblood") asserts the following remaining causes of action:  Count I – 42 U.S.C. § 1983 claim for violation of the First Amendment against Georgiana; Count IV – § 1983 claim (false arrest) for violation of the Fourth Amendment against Benbow; Count V – § 1983 claim (false imprisonment) for violation of the Fourth Amendment against Benbow; Count VI – § 1983

---

[1] Defendants Beverly Rogers ("Rogers") and Tonya Castleberry ("Castleberry") were previously dismissed from this action on September 14, 2021. (Doc. 74).  The dismissal of Rogers and Castleberry resulted in the dismissal of Counts II, III, and XIV in their entirety. Defendant Ricky Stallworth ("Stallworth") has never been served and thus is not a party.  Because Stallworth is not a party to this action, the count brought solely against him, Count XIII, is due to be dismissed.

claim (deliberate indifference, unlawful seizure) for violation of the Fourth Amendment against Peagler and Cook; Count VII – §1983 claim (unlawful seizure) for violation of the Fourth Amendment against Peagler and Cook under a theory of supervisory liability; Count VIII – §1983 claim for conspiracy to violate constitutional rights against Benbow, Peagler, and Cook; Count IX – malicious prosecution against Georgiana; Count X – false arrest against Georgiana; Count XI – malicious prosecution against Benbow and Georgiana; and Count XII – civil conspiracy against Benbow, Peagler, Cook, and Castleberry. Plaintiff Melissa Youngblood asserts one cause of action: Count XV – loss of consortium against Georgiana, Peagler, Benbow, and Cook.

In their motion for summary judgment, the Defendants move to dismiss each cause of action asserted against them. (*See* docs. 181 and 182). In opposition to summary judgment, Youngblood argues that his "malicious prosecution, false arrest, and false imprisonment claims against the individual Defendants must survive," (doc. 197 at 4), and he asks the Court to "deny the motion for summary judgment *on the above claims*," (*id.* at 8) (emphasis added). Youngblood fails to address the individual Defendants' motion for summary judgment on his other claims, and he makes no arguments regarding his claims against the City of Georgiana. In addition, Plaintiff Melissa Youngblood fails to respond to the Defendants' motion for summary judgment on her loss of consortium claim.

"[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) (citing *Rd. Sprinkler Fitters Loc. Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994)).

2

Because they fail to address claims other than those for malicious prosecution, false arrest, and false imprisonment, the Youngbloods have abandoned them. Accordingly, the Defendants' motion for summary judgment is due to be GRANTED as to Counts I, VI, VII, VIII, XII, and XV. The Youngbloods likewise wholly fail to address their claims against Georgiana and thus have abandoned those claims. Accordingly, summary judgment is due to be GRANTED as to Counts IX and X, and as to Count XI against Georgiana. Further, as to Count XI against Benbow, Youngblood asserts a claim for malicious prosecution under Alabama law. Although a generous reading of Youngblood's opposition to summary judgment might suggest that his mention of "malicious prosecution" is sufficient to address his claim under state law, the level of generosity required to make that determination exceeds reasonable bounds. Indeed, a complete review of Youngblood's opposition brief reveals no citation to Alabama law, no analysis of the elements of a cause of action for malicious prosecution under Alabama law, and no response to Benbow's invocation of state-agent immunity. Youngblood's failure to respond to Benbow's motion for summary judgment on the state law claim for malicious prosecution operates as an abandonment of that claim, and summary judgment is due to be granted as to Count XI.

Pursuant to 42 U.S.C. § 1983, Youngblood asserts claims against Benbow for deprivation of his Fourth Amendment rights to be free from false arrest (Count IV) and false imprisonment (Count V).[2] Benbow contends that he is entitled to summary judgment

---

[2] Because the only remaining claims (Counts IV and V) are brought solely against Benbow, the Court refers to him as the singular "Defendant."

because Youngblood's claims fail as a matter of law and he is entitled to qualified immunity.

Based on a thorough review of the record, the briefs, and the applicable law, for the reasons to be discussed, the Court concludes that the motion for summary judgment is due to be GRANTED.

## II.  JURISDICTION

The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Youngblood's state law claims pursuant to 28 U.S.C. § 1367(a).

Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  STANDARD OF REVIEW

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-*

4

*Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Hornsby-Culpepper*, 906 F.3d at 1311. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Hornsby-Culpepper*, 906 F.3d at 1311. The burden then shifts to the non-moving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252. Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Id.* However, "mere conclusions and

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV. FACTS[3]

On November 15, 2018, Youngblood was physically assaulted by Ricky Stallworth at Woodglen apartment complex in Georgiana, Alabama.  Defendant Benbow, an officer with the Georgiana Police Department, responded to an emergency call and arrived at the scene.   Benbow determined that Stallworth was the aggressor and arrested him.[4] Youngblood was not arrested.

On November 21, 2018, Stallworth filed a harassment claim against Youngblood asserting that Youngblood threatened him on multiple occasions.  Stallworth subsequently met with Magistrate Judge Rogers and swore out a warrant against Youngblood for harassment.  Rogers issued an arrest warrant for Youngblood on December 4, 2018.

On December 9, 2018, Youngblood requested all written documentation or body camera footage from the November 15, 2018 incident.  On December 13, 2018, Cook informed Youngblood in a telephone call that Youngblood could get the video footage but he was required to pick it up at the police station.

Youngblood became aware of the December 4, 2018 arrest warrant, and on December 21, 2018, he turned himself in to the Georgiana police.  Benbow arrested him

---

[3] The facts that follow are viewed in the light most favorable to Youngblood, drawing all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] A criminal complaint against Stallworth was subsequently filed in municipal court charging him with assault in the third degree.

on the warrant for harassment.  Following his arrest, Youngblood posted bond and was released.  He also received the body camera footage he had requested from the November 15, 2018 incident.

The municipal court criminal case against Youngblood for harassment was conditionally dismissed in January 2019 and fully dismissed on December 20, 2019.  This action was filed on December 23, 2019.[5]

## V.  DISCUSSION

Benbow has moved for summary judgment on Youngblood's Fourth Amendment false arrest and false imprisonment claims, asserting qualified immunity.  "Any plaintiff suing a government official under 42 U.S.C. § 1983 has a steep hill to climb.  The doctrine of qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)); *see also Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020).

"Qualified immunity protects government officials who are sued under § 1983 for money damages in their individual capacities." *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021).  Qualified immunity is "an *immunity from suit*" that "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021) (emphasis in original) (quoting *Mullenix v.*

---

[5] The operative complaint is the second amended complaint filed on June 1, 2020. (Doc. 18).

*Luna*, 577 U.S. 7, 11 (2015)).  The defendant official bears the initial burden of showing he was "acting within his discretionary authority." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019) (citation omitted).  The burden then shifts to the plaintiff to show (1) that the defendant "violated a constitutional right" and (2) that "this right was clearly established at the time of the alleged violation." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1181 (11th Cir. 2020) (citation omitted).

### A.  Discretionary Function

Youngblood does not respond to the Defendant's qualified immunity arguments. Instead, Youngblood cites to law regarding qualified immunity, but he neither provides analysis of that law nor applies the law to the facts of this case.  Without any analysis, meaningful or otherwise, from Youngblood, the Court considers whether Benbow is entitled to qualified immunity on Youngblood's Fourth Amendment claims.

The Court first determines whether Benbow was performing a discretionary function, as it is a component of the qualified immunity inquiry applicable to federal claims.  In examining whether an official was performing a discretionary function, federal courts ask whether the government employee was (1) performing a legitimate job-related function (2) through means that were within his power to utilize. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  The focus is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Spencer v. Benison*, 5 F.4th 1222, 1231 (11th Cir. 2021) (citing *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).  "Investigating crimes, conducting searches, and making arrests are legitimate job-

8

related functions within the discretionary authority of police officers." *Mears v. McCulley*, 881 F. Supp. 2d 1305, 1318–19 (N.D. Ala. 2012).[6]

In this case, Youngblood does not dispute, and the undisputed facts demonstrate, that Benbow was performing a discretionary function when he arrested Youngblood. *See Hutton v. Strickland*, 919 F.2d 1531, 1537–38 (11th Cir. 1990) (holding that sheriff's deputies acted within their discretionary authority when investigating a suspected crime, making an arrest, and searching a vehicle).

**B. Constitutional Violation**

Once a government official establishes that he was performing a discretionary function, a plaintiff must satisfy a two-pronged inquiry to defeat a qualified immunity defense. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)).  The first prong asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong of the qualified-immunity analysis asks whether the violation of the federal right was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  These prongs may be analyzed in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Youngblood asserts that Benbow failed to conduct an adequate investigation into Stallworth's complaint against him and that, accordingly, there was no probable cause to

---

[6] Although the Court recognizes that *Mears* is nonbinding, the Court finds its analysis persuasive.

arrest him on the resulting warrant.   The Defendant, on the other hand, argues that Youngblood cannot establish a constitutional violation because he was arrested pursuant to a valid arrest warrant.   Benbow further argues that the arrest warrant provided probable cause, or arguable probable cause, to arrest Youngblood for harassment.   Benbow asserts that because the warrant provided probable cause, or at least arguable probable cause, he is entitled to qualified immunity on Youngblood's Fourth Amendment claims.

The existence of probable cause would defeat Youngblood's Fourth Amendment claims against Benbow. *See Richmond v. Badia*, 47 F,4th 1172, 1180 (11th Cir. 2022) (explaining that probable cause defeats a Fourth Amendment false arrest claim); *Case v. Eslinger*, 555. F.3d 1317, 1330 (11th Cir. 2009) (explaining that probable cause defeats a Fourth Amendment false imprisonment claim).   "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.   Probable cause is not a high bar." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (internal quotation marks omitted).   The "bar only rises higher by the fact that [Youngblood] was arrested under the authority of a warrant." *Turner v. Williams*, 65 F. 4th 564, 582 (11th Cir. 2023).   The existence of an arrest warrant "creates a presumption, albeit a rebuttable one, that probable cause existed for the arrest." *Id*.   The court looks to the underlying affidavit in support of the warrant to determine whether the affidavit contained any intentional or reckless misstatements or omissions. *Id*.   Youngblood does not point to any falsehoods, omissions, or misstatements contained in the affidavit.   In fact, Youngblood does not address the warrant at all except to complain that the warrant does not excuse Benbow's failure to conduct a sufficient investigation into the November 15, 2018 altercation.

The Court finds that the affidavit in support of the arrest warrant establishes probable cause to arrest Youngblood for harassment.[7]   Youngblood was charged with harassment in violation of Ala. Code § 13A-11-8.   Under Alabama law, "[a] person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he . . . [d]irects abusive or obscene language or makes an obscene gesture towards another person." Ala. Code § 13A-11-8(b).   On November 21, 2018, Stallworth pursued a criminal complaint against Youngblood in the Municipal Court of Georgiana, charging Youngblood with harassment. (Doc. 182-3 at 7–8).   Specifically, Stallworth attested to the following facts in support of his complaint:

> This incident occurred at Woodglen apartments in [G]eorgiana. [O]n November 15, 2018 at 6:30 a.m. I came out of my apartment for my daily walk[.] I seen Eric Youngblood riding through the parking lot.   He made eye contact with me and then reach (sic) down to his side and pulled out a revolver hand gun and brandish (sic) at me.   I immediately retreated back into my apartment.   I walked over to apartment manager (sic) office[.] I walked in[.] Eric was on his way out (sic) office.   As he passed me he said Mother Fucker I'm still going to kill you.   At that time him and I got into an altercation.   Eric has made threats about killing me in the past.   I also noticed when [I] was at clerk (sic) office he rode by following me and I pointed it to the clerk.   I just want the harassment and the following to stop.

(*Id.* at 3).

---

[7] Although "an arrest made without probable cause violates the Fourth Amendment," Benbow would be entitled to qualified immunity if he had "arguable probable cause" to arrest Youngblood. *See Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998).   "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiff." *Richmond*, 47 F.4th at 1181 (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).   The Court concludes that, based on the totality of circumstances, Benbow also had arguable probable cause to arrest Youngblood.

A neutral magistrate judge issued an arrest warrant based on Stallworth's attestations. Youngblood was subsequently arrested and charged with harassment. The facts as alleged by Stallworth in his attestation "point to a substantial chance" that Youngblood committed the offense of harassment against Stallworth. *See Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (holding that the correct legal standard to determine probable cause is to "ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity" (alteration in original) (quoting *Wesby*, 583 U.S. at 61)). Indeed, Stallworth asserted that Youngblood used abusive and obscene language towards him, brandished a weapon, and threatened to kill him on multiple occasions. The Court finds that a reasonable officer could conclude that there was a substantial chance that Youngblood had engaged in criminal activity, and based on the warrant, there was probable cause to arrest Youngblood for harassment. Because the Court concludes that there was probable cause to arrest Youngblood, Youngblood has failed to demonstrate a constitutional violation, and Benbow is entitled to summary judgment on Youngblood's Fourth Amendment claims.[8]

## VI. CONCLUSION

Accordingly, and for good cause, it is

ORDERED that the Defendants' motion for summary judgment (doc. 181) is GRANTED, and judgment will be entered against the Plaintiffs and in favor of the Defendants.

---

[8] Because the Court concludes that Benbow did not violate Youngblood's Fourth Amendment rights, the Court pretermits further qualified immunity analysis.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 20th day of September, 2023.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE